# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                No. CR 17-2556 JB

ADONIS BAKER,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order, filed March 5, 2018 (Doc. 51)("Appeal").  The Court held a hearing on March 19, 2018.  The primary issue is whether Defendant Adonis Baker presents a flight risk or is a danger to the community, and should therefore remain in custody pending trial, or whether the Court can furnish conditions of release that can reduce those risks to acceptable levels.  The United States of America has shown, by clear-and-convincing evidence, that Baker is a danger to the community, and has shown, by a preponderance of the evidence, that Baker is a flight risk.  The Court denies Baker's Appeal, thereby affirming the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico's Order of Detention Pending Trial, see Order, filed September 29, 2017 (Doc. 15)("Order of Detention"), and Magistrate Judge Fashing's Order Denying Motion to Release Defendant From Custody, filed January 2, 2018 (Doc. 46)("Order Denying Motion to Release").

## FACTUAL BACKGROUND

The Court sets forth the facts as the United States alleges them in its Indictment, filed September 21, 2017 (Doc. 1)("Indictment"), and as the United States Probation Office describes

them in the Bail Report (disclosed October 13, 2017)(Doc. 24)("Bail Report"), bearing in mind that Baker is presumed innocent of all charges, see Estelle v. Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." (citing Coffin v. United States, 156 U.S. 432, 453 (1895))). The Court recites the United States' version of the facts because the high burden of proof placed on the United States necessitates that it has a cogent, internally consistent version of events,[1] and not out of any predisposition to believe the United States' side of the story. See In re Winship, 397 U.S. 358, 365 (1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

The Bail Report indicates that Baker was born in Alabama and has lived in the Albuquerque, New Mexico area for the last four years. See Bail Report at 1-2. Baker has a father and a sister, who both reside in Birmingham, Alabama. See Bail Report at 2. Baker has daily contact with his sister and weekly contact with his parents. See Bail Report at 2. His mother is believed to reside in Indiana. See Bail Report at 2. Baker advises that he has been in a relationship for the past two years and that he has no children. See Bail Report at 2.

_____

[1]The defendant in a criminal case, on the other hand, need not present a cogent theory of the case or propose a comprehensive factual story. He or she may sit back and attempt to poke holes in Plaintiff United States of America's theory of the case and need not put on any case at all. See United States v. Wittig, No. 03-40142-JAR, 2005 WL 758606, at *4 (D. Kan. April 4, 2005)(Robinson, J.)("It is axiomatic that a defendant has a presumption of innocence, which means that a defendant need not present evidence, as the defendant has no burden of proof in a criminal case." (footnote omitted)).

Baker has been unemployed since 2013 and could not provide the name of his last employer.  See Bail Report at 2.  Baker does not have a United States of America passport and has never traveled outside of the United States.  See Bail Report at 2.

Baker has a 2013 conviction for a drug-related offense.  See Bail Report at 3.  He has a certificate of completion from the State of Alabama Department of Corrections Substance Abuse Program, granted on October 27, 2006.  See Bail Report at 3.  The Bail Report also references other documentation admitting past drug addiction.  See Bail Report at 3. No evidence suggests Baker has current or past mental health conditions.  See Bail Report at 3.

Since 2003, Baker has been charged with criminal conduct five times, not including the current charges.  See Bail Report at 5-6.  From 2003 to the present, Baker was charged with the following: (i) theft of property (April 2003); (ii) robbery (May 2003); (iii) assault/reckless endangerment (March 2005)(Baker's only charge for violent behavior); (iv) possession of marijuana less than two ounces and possession of a controlled substance less than twenty-eight grams (August 2012); and (v) improper use of evidence of registration, improper display of registration plate, and no driver's license (November 2015).  See Bail Report at 5-6.  Baker was convicted of the theft of property, the robbery, the misdemeanor possession of marijuana, and of improper display of his registration plate.  See Bail Report at 5-6.

At the hearing on the Appeal, on March 19, 2018, see Transcript of Detention Hearing (taken March 19, 2018)(Court)("March 19 Tr.")[2], the Court elicited details of Baker's past

---

[2]The Court's citations to the transcripts of the hearings refer to the court reporter's original,

convictions from his counsel.  See March 19 Tr. at 4:8-9 (Court).  Baker alleges that his theft of

property conviction was a petty theft, involving shoplifting from Walmart.  See March 19 Tr. at

4:19-22 (Court).  Baker also alleges that his robbery conviction was a purse snatching, committed

by another individual while Baker drove the car involved in the crime.  See March 19 Tr. at 4:23-

5:2 (Baiz).  Baker asserts that the circumstances of his assault/reckless endangerment charge are

that he ran a few red lights, and then an officer stopped to investigate him and see whether the car

he was driving was stolen.  See March 19 Tr. at 5:10-13 (Baiz).  There is no disposition for that

charge mentioned in the Bail Report.  See March 19 Tr. at 5:6-9 (Court).  After Baker's robbery

conviction, he was placed on probation and then his probation was revoked, because he had a dirty

urine test due to cocaine use.  See March 19 Tr. at 5:16-20 (Baiz).  Baker asserts that his traffic-

related offenses are that he was found to have a newly-purchased car that had not been registered

with the DMV.  See March 19 Tr. at 6:19-21 (Baiz).  Baker has previously violated probation, and

has had an active warrant since April 28, 2014, extraditable in Texas only, for a probation violation

related to the possession of marijuana charge.  See Bail Report at 5-6. Baker has also failed to

appear, and in December 2015, the County of Bernalillo, New Mexico, issued a failure to appear

bench warrant for Baker on his traffic-related offenses.  See Bail Report at 6.  Bernalillo County

canceled the warrant in May, 2017, when he was convicted of improper display of his registration

plate and ordered to pay fines and fees.  See Bail Report at 6.

---

unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

Baker contends that, because he is a felon, he does not possess a firearm.  See Transcript of Hearing at 3:20-21 (taken September 29, 2017)(Baiz)("Sept. 29 Tr.").  At the September 29, 2017, detention hearing, however, Homeland Security Investigations Agent Morgan Langer testified that almost every alleged victim interviewed stated that Baker "was armed at all times." Sept. 29 Tr. at 9:10-11 (Langer).  Langer also testified that he found "some handgun ammunition" in Baker's apartment, although he did not find a firearm.  See Sept. 29 Tr. at 9:21-10:1 (Langer, Court).  Langer relayed what he had learned through his investigation of Baker: that Baker "targeted women that were often homeless, often drug-addicted, vulnerable women, and would use that to recruit them through force, coercion, threats, violence, into a life of prostitution where the proceeds from their prostitution activities would be turned over to Mr. Baker and some of his associates."  See Sept. 29 Tr. at 8:12-18 (Langer).  Langer testified that there were reports of women who were drugged and awoke in different cities, including cities outside of New Mexico. See Sept. 29 Tr. at 8:23-25 (Langer).  At least one victim reported Baker holding a gun to her head. See Sept. 29 Tr. at 11:2-4 (Simms, Langer).  Another reported Baker holding her head under water. See Sept. 29 Tr. at 11:5-7 (Simms, Langer).  Of the six named victims, three reported that Baker had committed acts of violence against them, and a fourth reported that Baker had threatened her with violence.  See Sept. 29 Tr. at 15:2-4 (Langer).  Langer testified that Baker used "physical violence, beatings with his hands . . . threats with a firearm . . . sexual violence" and rape against the victims.  Sept. 29 Tr. at 10:19-11:1 (Simms, Langer).  Langer reported that Baker lured the juvenile victim identified in the Indictment, a runaway from Phoenix, Arizona, into his car with

drugs.  See Sept. 29 Tr. at 22:7-11 (Langer).  Langer alleges that, once the juvenile was in Baker's

car, she noticed it had disabled locks.  See Sept. 29 Tr. at 22:12-13 (Langer).  Langer then asserts

that Baker drove the juvenile from Phoenix to Albuquerque for the purpose of engaging in

prostitution, but that Baker released her after she refused to engage in prostitution.  See Sept. 29

Tr. at 22:13-16 (Langer).  Langer testified that other victims reported that they were too afraid of

Baker to cooperate in the investigation.  See Sept. 29 Tr. at 23:5-12 (Simms, Langer).

The twelve-count Indictment charges Baker with sex trafficking by means of force, threats,

fraud, and coercion; coercion and enticement to engage in prostitution; transportation for

prostitution; sex trafficking of a child; and transportation of a minor with intent to engage in

criminal sexual activity.  See Indictment at 1-6.[3]  The United States asserts that the penalties Baker

faces on at least four of the twelve counts in the original Indictment are a mandatory fifteen years

in prison, that may run consecutively.  See Sept. 29 Tr. at 26:9-12 (Simms).

The United States Probation Office ("USPO") recommends that Baker remain in custody,

as it appears there "is no condition or combination of conditions that will reasonably assure the

appearance of the defendant as required and the safety of the community."  Bail Report at 4.  In

support of its recommendation, the USPO alleges ten factors which indicate that Baker poses a

---

[3]On June 13, 2018, a federal Grand Jury returned a nineteen-count Superseding Indictment against Baker.  See Superseding Indictment, filed June 13, 2018(Doc. 63)("Superseding Indictment").  The Superseding Indictment charges Baker with sex trafficking by means of force, threats, fraud, and coercion; coercion and enticement to engage in prostitution; transportation for prostitution; sex trafficking of a child; and transportation of a minor with intent to engage in criminal sexual activity.  See Superseding Indictment at 1.

danger to the community: (i) Nature of Instant Offense; (ii) Prior Arrests and Convictions; (iii) Substance Abuse History; (iv) Violent Behavior History; (v) Pretrial, Probation, Parole, or Supervised Release Status and Compliance; (vi) Criminal Activity While Under Supervision; (vii) History/Charge Involving a Child; (viii) History/Charge involving Sex Offense/Abuse; (viv) Safety Concerns for the Community or a Specific Individual; and (x) Criminal History.  See Bail Report at 4.  In the Addendum to the Bail Report, filed March 16, 2018 (Doc. 57)("Addendum"), the USPO also cites the fact that three of the victims have not been located.  See Addendum at 1.[4]

## PROCEDURAL BACKGROUND

On September 21, 2017, a federal grand jury returned the twelve-count Indictment in United States v. Baker, No. CR 17-2556 JB (D.N.M.)(Browning, J.).  Magistrate Judge Fashing held a detention hearing on September 29, 2017.  See Sept. 29 Tr. at 1. After the September 29, 2017, detention hearing, Magistrate Judge Fashing concluded that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions will reasonably assure Baker's appearance as required and the safety of the community, because there is probable cause to believe that Baker committed an offense involving a minor victim.  See Order of Detention at 2.  According to Magistrate Judge Fashing, Baker did not introduce sufficient evidence to rebut this presumption.  See Order of Detention at 2.  Additionally, weighing the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, Magistrate Judge Fashing

---

[4]While the Addendum states that there are five named victims, see Addendum at 1, there are six victims named in the Indictment, see Indictment at 1-6.

concluded that the United States proved by clear-and-convincing evidence that Baker is a danger to the community, and by a preponderance of the evidence that Baker is a flight risk. See Order of Detention at 2. Magistrate Judge Fashing noted Baker's previous failure to appear in court as ordered, his lack of stable employment, his history of violence or use of weapons, the lengthy period of incarceration which he will face if he is convicted of the present charges, and the weight of the evidence against him, in supporting her conclusions that Baker is a flight risk and a danger to the community. See Order of Detention at 2-3.

Following the Order of Detention, Baker filed a Motion to Release Defendant from Custody, filed December 20, 2017 (Doc. 42)("Motion to Release"). In the Motion to Release, Baker asserts that he has a minimal criminal history, family members in Birmingham who are willing to serve as third-party custodians, and that he has an employment history pre-dating 2013. See Motion to Release at 3. Baker requests that "he be allowed to live and work in Birmingham and reside with his father and grandmother as he is not either a danger to the community or a flight risk." Motion to Release at 3.

The United States filed a response to the Motion to Release. See United States' Response to Defendants' Motion to Release Defendant from Custody, filed December 28, 2017 (Doc. 45)("Response to Motion to Release"). In the Response to Motion to Release, the United States argues that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) that there is no condition or set of conditions that will reasonably assure Baker's appearance as required and the safety of the community, because there is probable cause to believe Baker violated 18 U.S.C.

§§ 1591 and 2423, both offenses involving minor victims.  <u>See</u> Response to Motion to Release at 1-2.  Specifically, the United States asserts that Baker "is alleged to have lured a minor into his vehicle in Arizona, and drove her to New Mexico while she was passed out under the influence of drugs, so that she could work as a prostitute for him."  Response to Motion to Release at 1-2.  The United States argues that Baker did not put forth sufficient information in his Motion to Release to overcome the presumption in his case.  <u>See</u> Response to Motion to Release at 2.  The United States argues that Baker's proposed living arrangements in Alabama do not overcome the rebuttable presumption against release, because the nature of the charges against Baker indicate "he will drive hundreds of miles from city to city to victimize women by forcing them into prostitution."  Response to Motion to Release at 2.  The United States asserts that Baker failed to advance any reason why his proposed living arrangement would overcome the presumption in favor of detention in his case.  <u>See</u> Response to Motion to Release at 2.

The United States argues that Baker is a flight risk, because he has minimal ties to New Mexico, a history of failure to appear, and an outstanding misdemeanor warrant in Texas (demonstrating his unwillingness to appear in court), and is facing a mandatory minimum of fifteen years' incarceration on multiple charges.  <u>See</u> Response to Motion to Release at 2.

The United States also argues that Baker is a danger both to the community and to the victims, because, the United States alleges, Baker regularly possessed a firearm, used physical violence, threats, and drugs to control women, and trafficked women -- including a minor -- using force, fraud, and coercion.  <u>See</u> Response to Motion to Release at 2-3.  Finally, the United States

argues that, because Baker is facing a long period of incarceration, he has an interest in finding and silencing his victims. See Response to Motion to Release at 2-3.

First, although Magistrate Judge Fashing stated that Baker's criminal history is not significant, she asserted that it does not demonstrate that he is not a flight risk or a danger to the community, and it is not sufficient to rebut the presumption in favor of detention. See Order Denying Motion to Release at 2-3. In support, Magistrate Judge Fashing highlighted that Baker's criminal history includes a probation revocation on his robbery conviction from May, 2006, a probation violation with an active warrant from 2012, and a failure to appear on a misdemeanor charge in December 2015.

Second, Magistrate Judge Fashing cited to the victims' reports of violence and threats of violence testified to at the detention hearing by Langer. See Order Denying Motion to Release at 3. Magistrate Judge Fashing noted that Counts 1 and 2 of the Indictment allege that Baker engaged in the conduct testified to at the hearing, as far back as 2012. See Order Denying Motion to Release at 4. According to Langer's testimony, Baker has been unemployed since 2013, and has an apartment in Albuquerque, a residence in Phoenix, and traveled to Phoenix, Colorado Springs, Las Vegas, and elsewhere during the investigation. See Order Denying Motion to Release at 4. Magistrate Judge Fashing also notes that the United States represented at the hearing that at least four of Baker's charged offenses carry a minimum sentence of fifteen years of incarceration. See Order Denying Motion to Release at 4.

Magistrate Judge Fashing denied the Motion to Release, concluding that, considering the testimony that Langer provided at the detention hearing, the fact that Baker

> has family members in Alabama who may be willing to serve as third-party custodians, and that he has an employment history prior to 2013, has no material bearing on whether Baker is a flight risk or a danger to the community. This information is also insufficient to overcome the presumption that Baker is both a flight risk and a danger.

Order Denying Motion to Release at 4. Accordingly, Magistrate Judge Fashing declined to reopen the detention hearing and denied Baker's request for release. See Order Denying Motion to Release at 4.

### 1. Baker's Appeal.

Baker appeals the Order of Detention and the Order Denying Motion to Release. See Appeal of Detention Order, filed March 5, 2018 (Doc. 51)("Appeal"). Baker argues that circumstances in his case are such that the rebuttable presumption under 18 U.S.C. § 3142(e) "is overcome and the Court should release Baker from custody." Appeal at 2. Baker first cites to his minimal criminal history, the willingness of his father and grandmother to serve as third party custodians, and his employment history before 2013. See Appeal at 4. As Magistrate Judge Fashing stated in the Order Denying Motion to Release:

> All the reasons that Baker gives for his release -- that he "has a minimal criminal history," that he is from Birmingham, Alabama and has family members there who are willing to serve as third party custodians, and that he has a history of employment before 2013, Doc. 42 at 2-3 -- were known to Baker on September 29, 2017 (the day of his detention hearing), and he could have presented this information to the Court then. Indeed, the Court considered Baker's criminal history at the detention hearing, and although that history is not significant, it was not sufficient to rebut the presumption that he is both a flight risk and a danger to the community.

Order Denying Motion to Release at 2.

Baker argues that the facts of the Indictment alleging that he was involved in allegations in 2012 are false.  See Appeal at 5.  Baker asserts he was living in Beaumont, Texas and working at Subway Sandwiches, until at least 2013, and therefore could not have been involved in the "acts in the indictment between June 2012 and June 2013."  Appeal at 5.  Baker also asserts that the alleged victim "principally" responsible for the allegations of violence against women, V.A., never stated during her interview with Baker's defense team that she was afraid of Baker.  Appeal at 5. Baker further asserts only one audio recording of an interview with a government witness has been disclosed to him thus far in discovery.  See Appeal at 5.  In that recording, "Jessica," one of the victims, repeatedly stated to a police officer, despite being prompted to say that she felt coerced, that she was "not afraid of Baker and that she was engaging as a sex worker because she wanted to, not because she was forced.  She also stated that Baker would not do anything violent because he was a 'caring person.'"  Appeal at 5.

Finally, Baker asserts that he is not a danger, and argues that the "clear and convincing evidence" standard that the United States must meet requires "proof that the particular defendant actually poses a danger to the community, not that the defendant in theory poses a danger."  Appeal at 6 (citing United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991)).  Because Baker asserts that the allegations that witnesses are afraid of him are false, Baker contends that he does not actually pose a danger to the community, and therefore that the United States has not established

dangerousness by clear-and-convincing evidence as required to support his pretrial detention.  See Appeal at 6.

Alleging that, based on a consideration of the § 3142(g) factors, he "does not pose a risk of danger to the community, nor is he at risk of non-appearance" such as could not be managed by the imposition of reasonable conditions, Baker requests that he "be allowed to live at La Pasada Halfway House" pending trial.  Appeal at 6.  In conclusion, Baker requests that the Court "set this matter for a hearing as soon as possible; reverse the Magistrate Judge's order of detention in this cause [sic]; enter an order setting reasonable conditions of release; and provide for such other and further relief to which the Court may find Baker to be justly entitled."  Appeal at 8.

### 2.    The United States' Response.

The United States requests that the Court deny Baker's Appeal, as he "did not introduce sufficient evidence to rebut the presumption of detention, and has offered no new evidence that circumstances have since changed."  Response at 1.  The United States argues that there "are no conditions that will reasonably assure Defendant's presence at future hearings, or assure the safety of the community."  Response at 1.

The United States first asserts that the information Baker presents in his Appeal regarding his criminal history, family ties, and employment background is not new.  See Response at 3-4. The "Magistrate found such information does not have a material bearing on whether the Defendant is a flight risk or a danger to the community.  Not only is this information not new, but

it was considered by the Magistrate upon the Defendants [sic] Motion for Release." Response at 4 (citing Order Denying Motion for Release at 3-4).

The United States notes that, when Baker refers to the acts in the Indictment between June 2012 and June 2013, he is referring to "Counts 1 and 2, which actually allege a period from June 2012 through June 3, 2015." Response at 4. The United States maintains that, even if Baker was living and working in Texas until 2013, he could still be found guilty of these counts, because they allege a period until 2015. See Response at 4.

The United States takes the position that it is untrue that V.A. never said that she was afraid of Baker during her interview with Baker's defense team, and furthermore, the United States argues that this fact is "irrelevant to the weight of the evidence." Response at 4. The United States argues that whether a victim is currently scared of a defendant is not necessarily probative of whether the defendant ever used force, fraud, or coercion to compel victims to work as prostitutes. See Response at 4-5. Moreover, the United States relays that, upon V.A.'s information and belief, she was specifically asked "whether Defendant Adonis Baker really held her head under water, and whether she was really beaten at a local hotel," and she confirmed both allegations. Response at 5.

The United States next relays a new development, that since the interview with V.A., V.A. "has received a 'friend request' from an individual . . . [who is] Facebook friends with the Defendant" and whose motto on his Facebook page reads: "I will not go to jail." Response at 5. This individual, who goes by Facebook identity "Jimmie Choo" from Fairfield, Alabama,

contacted V.A. and requested that she give him a call.  <u>See</u> Response at 5.  The United States asserts that, while it cannot prove Baker was complicit in this individual contacting V.A., "it is extremely coincidental that this person, who V.A. does not know, contacted her from very near Birmingham, Alabama, and is Facebook friends with Adonis Baker."  <u>See</u> Response at 5.  The United States argues that this incident supports the United States' request for a protective order.  <u>See</u> Response at 5.

The United States argues that the Court should not hold an evidentiary hearing, because no new information or change in circumstances bearing on release has been presented, allowing the Court to simply review the record in evaluating Baker's requests.  <u>See</u> Response at 5.  The United States alleges that Magistrate Judge Fashing's findings, appropriately grounded in the live testimony at Baker's detention hearing, should stand.  <u>See</u> Response at 5 (citing 18 U.S.C. § 3142(f)(2)(A judicial officer may reopen a detention hearing only if he "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person in the community.").

The United States argues that a rebuttable presumption of detention arises under 18 U.S.C. § 3124(e)(3)(E), because Baker is charged with an offense involving a minor victim under 18 U.S.C. § 1591.  <u>See</u> Response at 6.  The United States notes that Magistrate Judge Fashing found that the presumption arose, and that Baker did not introduce sufficient evidence to rebut the presumption.  <u>See</u> Response at 6-7 (citing Sept. 29 Tr. at 29:14 (Court)).  The United States also

notes that Magistrate Judge Fashing found that there is clear-and-convincing evidence that Baker

is a danger to the community, based on the testimony at the detention hearing, and that Magistrate

Judge Fashing found by a preponderance of the evidence that Baker is a flight risk, based on his

lack of stable employment, the severe sentence he will face if convicted, and his failures to appear

and then-outstanding warrant.    See Response at 6-7.    Since Magistrate Judge Fashing's

determination, the United States asserts that the only potential change in circumstances is that

Baker's family members are willing to serve as third-party custodians, but the United States alleges

that Baker could have raised this information at the initial detention hearing and did not.    See

Appeal at 7.  Because there is no new information for the Court to consider, the United States asks

the Court to deny Baker's Motion to Release without an evidentiary hearing.  See Appeal at 7.

The United States argues that the four statutory factors listed in 18 U.S.C. § 3142(g) all

weigh in favor of detaining Baker.  See Response at 7.  These four factors are: (i) the nature and

circumstances of the offense; (ii) the weight of evidence against the defendant; (iii) the defendant's

history and characteristics; and (iv) the nature and seriousness of the danger to the community or

a specific individual that the defendant's release would pose.  See Response at 7 (citing 18 U.S.C.

§ 3142(g)).

First, the United States argues that the nature and circumstances of the charged offenses

support detention, because Baker has been accused of serious, forceful, and violent offenses

against women.  See Response at 7-8.  Citing to the testimony provided at the detention hearing,

the United States asserts that Baker "threatened victims with a gun," "held a victim's head under

water," "picked up women he had not met before and immediately drove them to another town for the purpose of selling their bodies for sex," drugged women, beat them with his hands, and used sexual violence against them. Response at 8. The United States asserts that hotel and Backpage.com records corroborate the allegation that Baker traveled between states with his victims, and that there are at least six victims, one of whom was a juvenile. See Response at 8. The United States concludes that the nature and circumstances of the charged offenses are serious, because Baker and his co-Defendants "made money by forcing women to sell their bodies, and used violence to accomplish this objective." Appeal at 7.

Second, the United States asserts that the weight of the evidence against Baker supports his detention pending trial. See Response at 8. The United States asserts that Baker's contact information was linked to advertisements selling the victims via Backpage.com, and that hotel records, Backpage.com advertisements and forensic phone examinations all corroborate the victims' accounts of Baker's involvement. See Response at 8. The United States alleges that "[s]ix different women, most of whom do not know each other, give accounts of how they were trafficked by Adonis Baker." Response at 9. The United States notes that Magistrate Judge Fashing, in her Order Denying Motion for Release, highlighted that the testimony at the detention hearing suggested that "three of the six named victims stated that the Defendant had committed acts of violence against them, to include beatings and rape." Response at 9. Most victims, including those not named, "stated the Defendant usually possessed a gun." Response at 9. The United States further notes that, based on the testimony at the detention hearing, Langer received

information from victims that Baker "targeted homeless or drug-addicted women, lured them into his control by offering them drugs, and then forced them to work as prostitutes and give him their earnings." Response at 9. The United States asserts that the juvenile victim was lured into Baker's car using drugs and transported across state lines. See Response at 9. Finally, the United States notes that Langer testified several women were too afraid of Baker to cooperate with the investigation. See Response at 9. Based on the testimony at the detention hearing, the United States concludes that the weight of the evidence against Baker is significant, and that this factor weighs in favor of pretrial detention. See Response at 9.

Third, the United States maintains that, while Baker's criminal history is not "the most extensive," it is "not minimal." Response at 9. The United States asserts that Baker was convicted of theft on May 14, 2003, in Alabama, and arrested the very next day for robbery. See Response at 9 (citing Bail Report at 5). The United States then notes that, after Baker was convicted of the robbery offense in July 2004, he was sentenced to three years confinement, one year suspended, and two years of probation, and that his probation was revoked in May 2006, after which he was sentenced to prison. See Response at 9-10 (citing Bail Report at 5-6). The United States also argues that Baker failed to appear on a misdemeanor charge and that, therefore, "this Court should have no illusion that the Defendant will appear on serious federal felonies." Response at 10.

Fourth, the United States argues that Baker has honed his "ability to identify and exploit the most vulnerable women in society to sell their bodies for profit" through his involvement in sex trafficking. Response at 10. The United States alleges that Baker would

literally pick up women on the side of the road and drive them to other states, away from their homes, away from their resources, with no one to rely on except for him. Once he had them where he wanted them, he forced them to work as prostitutes while his associate guarded them in their rooms. He then took all of their money to ensure they maintained limited options.

Response at 10.

The United States further argues that human trafficking, the offense of which Baker is accused, "overlaps with the sort of dangers that are more familiar to the community: drug use, drug sales, physical abuse, child abuse, and rape," making human trafficking extremely dangerous. Response at 10. Baker's release, contends the United States, will place his victims at risk, because he knows who they are and how to find him, and because the United States believes one of Baker's associates has already tried to contact an alleged victim. See Response at 11.

In conclusion, the United States asserts that Baker is a flight risk and a danger to the community. Because the weight of the evidence against him is strong and the nature and circumstances of his case are severe, Baker, the United States alleges, is a "member of the small, identifiable group of particularly dangerous defendants whose continued pattern of criminal activity shows that they pose a significant risk of recidivism or violent behavior, and should be detained pending trial. See United States v. Williams, 753 F.2d 329, 333 (4th Cir. 1985)." Response at 11. Asserting a fear that Baker will commit more crimes if released, the United States asks the Court to deny Baker's Appeal and to detain him until the resolution of this matter. See Response at 11.

3. **The Hearing**.

The Court held a hearing on March 19, 2018. <u>See</u> Transcript of Detention Hearing (taken March 19, 2018)(Court)("March 19 Tr."). Baker began the hearing by asserting that it was not known at the time of the initial detention hearing that his relatives could be third-party custodians. <u>See</u> March 19 Tr. at 1:13-18 (Baiz). Baker requested that the Court consider his request to reside at La Pasada Halfway House, given his short criminal history and the statement by one alleged victim, "Jessica," that Baker was a caring person and not a violent individual. <u>See</u> March 19 Tr. at 2:1-3:5 (Baiz). Baker went on to assert that the Facebook contact between "Jimmie Choo" and V.A. did not contain any threats, and that there is no evidence Baker was involved in that communication. <u>See</u> March 19 Tr. at 3:12-22 (Baiz).

Turning to Baker's criminal history, the Court asked him about the circumstances of his property theft conviction and robbery conviction. <u>See</u> March 19 Tr. at 4:11-13 (Court). Baker responded that the theft involved shoplifting, and the robbery was a purse-snatching committed by someone else, and Baker drove the robber. <u>See</u> March 19 Tr. at 4:19-5:2 (Court, Baiz). The Court then asked about the assault/reckless endangerment charge, and Baker responded that he ran a few red lights, and so an officer stopped and investigated him to determine if the car he was driving was stolen. <u>See</u> March 19 Tr. at 5:5-13 (Court, Baiz).

Baker admitted that after his robbery conviction, the Court did revoke his probation and reinstate his imprisonment because he submitted a urine test that was positive for cocaine. <u>See</u> March 19 Tr. at 5:14-20 (Baiz). Baker told the Court that after reincarceration, he was granted

probation again and completed it successfully, and did not use cocaine again.  See March 19 Tr. at 5:21-24 (Baiz).

The Court asked Baker about the probation violation bench warrant currently active against him, and Baker responded that he was convicted of a misdemeanor possession of marijuana and moved out of state and missed a court proceeding, but that the court which issued the warrant would not act on it.  See March 19 Tr. at 5:25-6:13 (Court, Baiz).  The Court then asked about a 2015 failure to appear bench warrant that Bernalillo County issued, and then canceled in 2017, and Baker responded that the warrant related to a traffic offense, and he had moved out of town, so could not promptly resolve it, but resolved it once he returned to Albuquerque.  See March 19 Tr. at 6:14-25 (Court, Baiz).

Regarding Baker's criminal history while under supervision, the Court clarified that the USPO is referring to the fact that Baker violated the terms of his probation in Texas.  See March 19 Tr. at 7:11-16 (Court).

When asked what the United States feared would occur upon Baker's release, the United States cited fears that Baker would contact or harass victims, or make them feel unsafe, and that he would engage in further human trafficking or drug sales.  See March 19 Tr. at 7:22-9:9 (Court, Simms).  The Court asked the United States what in Baker's criminal history gave it cause for concern, and the United States responded that his criminal history reveals a track record of crimes focused on vulnerable women, as evidenced by his purse-snatching conviction, and of not complying with the "things that you have to do when you're a defendant in a criminal case," such

as showing up to hearings, even on "insignificant charges." March 19 Tr. at 11:3, 11:11-14 (Simms). The United States also cited to his reckless endangerment charge and asserted that running red lights is "dangerous to the community for no good reason." See March 9 Tr. at 11:1 (Simms).

The Court then asked the probation officer what factors led the USPO to believe Baker would be a flight risk, and the probation officer cited to the fact that Baker did not report a change of address when he was on probation in Texas and then moved to New Mexico, the fact that he has been unemployed since 2013, and the fact that there are victims still missing in this case. See March 19 Tr. at 12:24-13:11 (Probation Officer).

The Court ultimately agreed with Magistrate Judge Fashing that Baker is a flight risk. See March 19 Tr. at 16:7-12 (Court). The Court also agreed with Magistrate Judge Fashing that Baker poses a danger to the community, and that the United States showed that by clear-and-convincing evidence. See March 19 Tr. at 15:4-7 (Court). The Court noted that the case against Baker appears to be strong and that there appears to be considerable evidence against him. See March 19 Tr. at 15:12-16 (Court). The Court stated that Baker does not have a significant violent history, and that his substance abuse may be under control, but expressed its concern that Baker faces serious charges and has not "done well on probation or parole or supervised release." See March 19 Tr. at 15:17-16:6 (Court). Given the seriousness of the charges against him, and his history of poor compliance, the Court determined it would not be possible to fashion a condition or set of conditions that would reasonably assure his appearance at future proceedings, and because Baker

might flee, the Court could not assure the safety of the community. <u>See</u> March 19 Tr. at 15:24-16:15 (Court). In conclusion, the Court agreed with Magistrate Judge Fashing's determination that Baker should continue to be detained. <u>See</u> March 19 Tr. at 16:18-20 (Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. <u>See</u> 18 U.S.C. § 3142(f); <u>United States v. Cisneros</u>, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors that 18 U.S.C. § 3142(g) lists:

> (g)    **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning
>
>> (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)      the weight of the evidence against the person;

(3)      the history and characteristics of the person, including

      (A)      the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B)      whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)      the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

8 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua–Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[5](per

---

[5]United States v. Villapudua–Quintero and United States v. Johnson, 660 F. App'x 663 (10th Cir. 2016) are unpublished Tenth Circuit opinions, but the Court can rely on unpublished Tenth Circuit opinions to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not

curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention for, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 791 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).  "Once the presumption is invoked, the burden of production shifts to the defendant."  United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)).

To determine whether there are conditions that will reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history

---

binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Villapudua–Quintero and United States v. Johnson have persuasive value with respect to a material issue and will assist the Court in its preparation of this Memorandum Opinion and Order.

and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F.Supp.2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436;  United States v. Ramos, 2016 WL 9021831, at *13-14 (D.N.M. Dec. 30, 2016)(Browning, J.).

## THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145(a) of Title 18 of the United States Code provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order.  18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d at 616 n.1.  "When the district court acts on a motion to revoke or amend a magistrate's

pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of a Magistrate Judge's order setting bond is de novo); United States v. Loera, 2017 WL 3098257 at *32 (D.N.M. June 22, 2017)(Browning, J.)("[T]he Court's review of Loera's detention is de novo."). See also United States v. Castanon-Perez, 2018 WL 1870431, at *5 (D.N.M. April 17, 2018)(Browning, J.)("Conducting a de novo review, the Court agrees . . . that Castanon-Perez is a flight risk . . . .").

## ANALYSIS

Baker's pretrial release is not warranted, because the United States has demonstrated, by a preponderance of the evidence, that he is a flight risk and, by clear-and-convincing evidence, that he is a danger to the community. The evidence against Baker is weighty, and he faces a severe sentence if convicted, which provides an incentive for him to flee. Baker's proposed conditions of release -- that he be released to the custody of the La Pasada Halfway House -- cannot adequately mitigate his tendency to do poorly on parole and release and thwart his temptation to flee. Additionally, the likelihood that Baker will pose a danger to the community and specifically to his victims by contacting or harassing them, is high, as the evidence suggests one of Baker's associates has already contacted an alleged victim. The Court, therefore, denies the Appeal.

**I.      THE BURDEN IS ON BAKER TO PRODUCE SOME EVIDENCE SHOWING THAT HE IS NOT A FLIGHT RISK OR A DANGER TO THE COMMUNITY.**

Baker concedes in his Appeal that "there is a presumption that no condition or combination of conditions of release can be fashioned in [his] case." Appeal at 2. Statutory section 18 U.S.C. § 3142(e)(3)(E) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain offenses involving minor victims, specifically including "an offense involving a minor victim under section . . . 1591 . . . [or] 2423 . . . ." 18 U.S.C. § 3142(e)(3)(E).[6]  See United States v. Johnson, 660 F. App'x 663, 665 (10th Cir. 2016)(unpublished)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of certain alleged sex traffickers of minor children). The grand jury indictment is "sufficient to establish the finding of probable cause" that a defendant committed the

---

[6]Section 1591 provides:

(a)  Whoever knowingly --

> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

charged offenses.  United States v. Holguin, 791 F. Supp. 2d at 1088.  See United States v. Silva, 7 F.3d at 1046 ("The grand jury indictment is sufficient to establish the finding of probable cause . . . ."); United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010)("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."(citations omitted)); United States v. Cruz, 23 F.3d 395, at *1 (1st Cir. 1994)("The grand jury indictment . . . gave the district court probable cause to believe that appellant had committed a crime of violence . . . . This, in turn, triggered the rebuttable presumption contained in § 3142(e)."(citations omitted)); United States v. Williams, 903 F.2d 844, at *1 (D.C. Cir. 1990)("Courts of appeals . . . have uniformly held that a judicial officer may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)."(citations omitted)).

The grand jury charged Baker in Count 11 of the Indictment with a violation of 18 U.S.C. § 1591(a)(1) and Count 12 of the Indictment charges Baker with a violation of 18 U.S.C. § 2423(a). See Indictment at 1.  The grand jury revised Count 12 in the Superseding Indictment to encompass charged violations of both 18 U.S.C. § 2423(a) and 18 U.S.C. § 2423(e). See Superseding Indictment at 1.  Baker does not reference Count 11, but Magistrate Judge Fashing found that the 18 U.S.C. § 3142(e)(3) presumption arises because both Counts 11 and 12 of the Indictment involve a minor victim. See Order of Detention at 1.  Statutory section 18 U.S.C. § 3142(e)(3)(E) provides that offenses involving a minor victim under either § 1591 or § 2423 suffice to invoke the rebuttable presumption of detention.  Both Counts 11 and 12, therefore, form a basis for the

rebuttable presumption of detention to arise. Baker concedes in his Appeal that "there is a presumption that no condition or combination of conditions of release can be fashioned in [his] case." Appeal at 2. The grand jury's Indictment and Superseding Indictment suffice to establish the finding of probable cause that Baker committed the charged offenses in Counts 11 and 12 of the Indictment and Superseding Indictment. Because there is probable cause that Baker committed the charged offenses, the rebuttable presumption in favor of detention arises.

Once the presumption in favor of detention is established, Baker must present some evidence that he is not a flight risk or a danger to the community. "Once the presumption is invoked, the burden of production shifts to the defendant." United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d at 1354-55). See United States v. Villapudua-Quintero, 308 F. App'x at 273 ("The defendant's burden of production is not heavy, but some evidence must be produced." (quoting United States v. Stricklin, 932 F.2d at 1355)).

"Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community." United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")). Notably, however, even if the defendant meets his burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to

release or detain." United States v. Stricklin, 932 F.2d at 1355. Accord United States v. Mercedes, 254 F.3d at 436.

## II.  BAKER HAS MET HIS BURDEN OF PRODUCTION IN THE FACE OF THE PRESUMPTION OF DETENTION.

"The defendant's burden of production is not heavy, but some evidence must be produced." United States v. Villapudua-Quintero, 308 F. App'x at 273 (internal quotation marks omitted)(quoting United States v. Stricklin, 932 F.2d at 1355). See United States v. Martinez, 2009 WL 5171853, at *7 (D.N.M. Oct. 28, 2009)(Browning, J.)(finding the defendant's burden of production satisfied where the only evidence presented in support of his release was his brother's testimony, which the Court found to be weak). See also United States v. Crisman, 2011 WL 5822731, at *15 (D.N.M. Nov. 15, 2011)(Browning, J.)(finding the defendant's burden of production satisfied where the only evidence presented in support of his release was his therapist's testimony, which the Court found not overwhelming). Baker presented some facts of which the Court might take judicial notice, such as the fifteen-year temporal gap since Baker's most recent prior conviction, that Texas will not extradite Baker based on his warrant for less than two ounces of marijuana, and that the traffic-violation-related warrant was resolved by conviction on May 24, 2017. See Sept. 29 Tr. at 24:24-25 (Baiz); Motion to Release at 2. Baker did not present any testimony in support of his release at the September 29, 2018, hearing. See Sept. 29 Tr. at 24:18-21 (Court, Baiz). In the Appeal, Baker adds an argument that the 2012 allegations against him in the Indictment are necessarily false, because he was in Beaumont at the time they occurred. See Appeal at 5. Counts 1 and 2 of the indictment allege a period from June 2012, through June 3,

2015.  See Indictment at 1-2.  The United States, therefore, is correct that, even if Baker was living and working in Texas until 2013, he could still be found guilty of these counts.  See Response at 4.

Baker alleges that the victims are not scared of him, and accordingly, he is not a danger to the community.  See Appeal at 6.  In support, Baker notes that V.A. never stated in her interview with Baker's defense team that she was afraid of Baker.  See Appeal at 6.  There are many plausible reasons why victims of sex trafficking might not speak out against a perpetrator.  Without suggesting that the same circumstances or motivations exist here, the Court notes, by way of illustration, some of the reasons trafficking victims in other cases have been reticent in interviews with authorities.  In United States v. Bell, 761 F.3d 900 (8th Cir. 2014), for instance, a sex trafficking victim did not tell authorities about her trafficker, because he had threatened retribution against her, and another victim testified that she performed commercial sex acts, because she "would rather work for [her trafficker] than put [her] family in danger."  United States v. Bell, 761 F.3d at 905-06.  Baker also presents his interpretation of the United States' recording of its interview with "Jessica," suggesting that

> [i]n spite of much prompting by the police officer to say that she felt coerced, Jessica repeatedly said she was not afraid of Mr. Baker and that she was engaging as a sex worker because she wanted to, not because she was forced.  She also stated that Mr. Baker would not do anything violent because he was a "caring person."

Appeal at 5.

As the United States correctly notes, Baker may still pose a danger to victims even if they state in interviews that they are not afraid of him.  See Response at 4-5.  Furthermore, even if the

Court accepts the notion that "Jessica" was engaging in sex work of her own volition -- and the evidence suggests otherwise -- the allegations and the evidence presented at the detention hearing indicate that "Jessica" and the other victims did not want to engage in sex work for Baker's pecuniary gain. Nevertheless, Baker's points constitute sufficient evidence to meet his obligation to produce evidence to rebut the presumption in favor of detention. While he meets his burden of production, Baker's evidence does not overwhelm the United States' other evidence. Baker states in conclusory fashion that he is not a danger to any other person or the community, see Appeal at 6, but he does not put forward any argument to this effect. Finally, there are six named victims in this case, and Baker refers only to two of them -- one who stated that she was not afraid of Baker, but the other who merely did not state that she was afraid of Baker. See Appeal at 6. The United States also argues that there is a significant risk of victim harassment and therefore also of witness tampering if Baker is released. See March 19 Tr. at 7:22-9:9 (Court, Simms). The United States specifically notes evidence discovered since the September 29, 2017, hearing that one of Baker's associates has already attempted to contact a victim over Facebook. See Response at 5.

The Court applies a lenient standard in determining what evidence is sufficient to satisfy the defendant's burden of production, and Baker has carried this light burden to produce evidence showing he is not a flight risk and is not a danger to the community. Magistrate Judge Fashing concluded that Baker "has not introduced sufficient evidence to rebut the presumption," Sept. 29 Tr. at 27:14-15 (Court), but the Court concludes that there is enough evidence for Baker to meet his burden of production. Magistrate Judge Fashing also concluded, that, even if Baker has

presented sufficient evidence to rebut the presumption, she would still order his detention, because she concludes that the United States has presented clear-and-convincing evidence that Baker is a danger to the community, and that, by a preponderance of the evidence, Baker is a flight risk.  See Tr. at 27:15-28:5 (Court).  With respect to Magistrate Judge Fashing's other holdings, this Court agrees.

III.   **THE COURT CONCLUDES THAT BAKER IS, BY A PREPONDERANCE OF THE EVIDENCE, A FLIGHT RISK, AND BY CLEAR-AND-CONVINCING EVIDENCE, A DANGER TO THE COMMUNITY.**

Although a presumption of detention arises in cases like Baker's, with charges involving a minor victim under §§ 1591 and 2423, the United States still carries the burden of proving that Baker is a flight risk and/or a danger to the community.  See United States v. Villapudua-Quintero, 308 F. App'x at 273 ("The burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."  (quoting United States v. Stricklin, 932 F.2d at 1354-55)).  See also United States v. Martinez, 2009 WL 5171853, at *3 ("The United States bears the burden of showing that the defendant is either a flight risk or a danger to the community.").   To determine whether there are conditions that will reasonably assure the defendant's appearance and the community's safety, a court shall consider: (i) the charged crime's nature and circumstances; (ii) the evidence's weight against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community, or to an individual that release would pose.  See United States v.

Laneham, 2016 WL 5376318 (D.N.M. 2016)(Browning, J.)(citing 18 U.S.C. § 3142(g)). Considering these factors, the Court agrees with Magistrate Judge Fashing's determination that there is clear-and-convincing evidence that Baker is a danger to the community, and, by a preponderance of the evidence, Baker is a flight risk.

### A.     BAKER IS A FLIGHT RISK.

Magistrate Judge Fashing, in considering Baker's lack of stable employment, the fact that he will face a severe sentence if he is convicted of the charged offenses, and his history of failures to appear and probation violations related to past offenses, found, by a preponderance of the evidence, that there is no condition or combination of conditions that will reasonably assure Baker's appearance as required.     See Sept. 29 Tr. at 28:1-11 (Court).  The Court agrees with Magistrate Judge Fashing's determination, and concludes that, considering the statutory factors, the United States has met its burden of proving by a preponderance of the evidence that no conditions could reasonably assure Baker's appearance in court.  The Court concludes that, were Baker released before his trial, it is more likely than not that he would flee.

The first factor from 18 U.S.C. § 3142(g), the nature and circumstances of the charged offenses, weighs in favor of finding Baker to be a flight risk.  Baker faces a lengthy period of incarceration if he is convicted of the charged offenses.  On at least four of the counts in the Superseding Indictment, Baker faces, if convicted, a mandatory fifteen years of incarceration on each. See Sept. 29 Tr. at 26:9-11 (Simms).  Given the severe sentence he faces if convicted of the charged offenses, and his poor performance when he has been on some form of supervised release,

the Court recognizes that Baker has a strong incentive to flee if released before trial and is unlikely to comply with the statutory conditions of release that the Court would impose.

The second statutory factor, the weight of the United States' evidence against Baker, also favors finding Baker to be a flight risk.  See 18 U.S.C. § 3142(g)(2).  The evidence against Baker, if admissible, supports a finding of guilt.  The weight of the evidence is thus against Baker.  At the detention hearing, in addition to the many reports from victims describing Baker's conduct, Langer testified about Backpage.com advertisements that advertised Baker's victims, and that also included telephone numbers, email addresses, and names of associates all known to be connected to Baker.  See Sept. 29 Tr. at 10:9-16 (Langer).  Langer conceded that there are currently no video or audio recordings of the alleged beatings which Baker inflicted on victims.  See Sept. 29 Tr. at 13:3-9 (Baiz, Langer).  Langer also conceded that, while there are interviews with the witnesses, not all the witnesses have prepared written statements.  See Sept. 29 Tr. at 13:10-14 (Baiz, Langer).  Langer testified, however, that there are hotel records from Arizona and Colorado linked to Baker, corroborating the Backpage.com records from Arizona and Colorado also linked to Baker.  See Sept. 29 Tr. at 15:5-22 (Baiz, Langer).

The United States argues that, based on the testimony provided at the detention hearing and the linking of Baker's contact information to advertisements selling women on Backpage.com, the evidence against him is strong, and that the United States can prove that Baker is involved in human trafficking.  See Response at 8-9.  Baker states that only one individual, V.A., is responsible for most of the allegations he faces of violence against women and that V.A. stated in her interview

with Baker's defense team that she was not frightened of Baker.  <u>See</u> Appeal at 5.  Baker also asserts that most interviews with witnesses are not recorded and that the only audio recording thus far disclosed in discovery is of an individual named "Jessica," who also states that she is not afraid of Baker and finds him to be a caring person.  <u>See</u> Appeal at 5.  In its response, the United States asserted -- and it is correct -- that whether victims are currently afraid of defendants is not dispositive of whether the Defendants induced them to engage in prostitution by means of force, threats, fraud, or coercion.  <u>See</u> Response at 4-5.

Considering the corroborating Backpage.com and hotel records linked to Baker, in combination with the reports from various victims, the Court concludes the evidence against Baker, if admissible, supports a finding of guilt.  The Court concludes, therefore, that the weight of evidence against Baker is significant enough to create a strong incentive for Baker to flee if released before trial, and that his poor performance on other forms of release suggests that he will not do well under the restrictive conditions that the Court could impose.

The third factor points in conflicting directions, but ultimately weighs in favor of finding Baker to be a flight risk.  The relevant sub-factors evaluating Baker's personal history and characteristics, the third factor under 18 U.S.C. § 3142(g), are:

> [C]haracter, physical and mental condition, family ties . . . length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, [] record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, [Baker] was on probation, on parole, or on other release pending trial sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A-B).

Some of Baker's personal characteristics weigh in favor of release. There is no evidence to suggest that Baker has current or past mental health conditions. See Bail Report at 3. Baker does not have a long criminal history. See Appeal at 4. Baker admits to past drug addiction and has a 2013 conviction for a drug related offense. See Appeal at 4. Baker indicated, through his counsel, that he no longer has a drug problem. See March 19 Tr. at 5:17-24 (Baiz).

On the other hand, Baker's community ties are outside of New Mexico. See Appeal at 4. Baker was born in Alabama, has a father, sister, and grandmother all in Alabama, and has only resided in New Mexico for the past four years. See Appeal at 4. The Court also notes that Baker does not have a good record concerning appearance at required court proceedings. See March 19 Tr. at 15:24-16:15 (Court). The Addendum to the Bail Report notes that Baker has a history of "non-compliance with past terms under community supervision." Addendum at 1. At the detention hearing, Magistrate Judge Fashing commented on the fact that Baker's record includes a 2015 failure to appear on a low-level offense, an active warrant from Texas on a 2012 probation violation, and a 2006 probation violation on a robbery conviction, indicating a history of poor performance on probation, parole, or supervised release. See Sept. 29 Tr. at 28:6-11 (Court). Baker's record indicates that he has fled in the face of much less substantial charges than those he currently faces. Further, Baker has no strong ties to New Mexico, and his closest family resides out of state. While an electronic bracelet may somewhat mitigate the risk of flight, realistically, a defendant can take off long before the USPO and the United States Marshals realize that he has fled, putting great distance between the defendant and the police.

The severe sentence that Baker faces if convicted and the significant weight of the evidence against him suggest that Baker has strong incentives to flee if released before trial. His lack of strong ties to New Mexico, and his history of poor compliance on supervised release suggest that he is likely to and able to flee. The Court therefore finds, by a preponderance of the evidence, that Baker is a flight risk. The Court also concludes there are no conditions of release that will reasonably assure the appearance of Baker as required.

B.      **BAKER IS A DANGER TO THE COMMUNITY**.

The fourth statutory factor -- the nature and seriousness of the danger to any person or the community that Baker's release poses -- weighs in favor of detention. The United States has presented evidence of the nature and seriousness of the danger to victims and to the community that Baker's release poses, and the Court concludes that the evidence is clear and convincing. The Court is concerned that Baker would not do well on release and would then try to contact alleged victims.

In requiring courts to consider available information concerning the charged offenses' nature and circumstances when determining whether to release a defendant from pretrial detention, 18 U.S.C. § 3142(g)(1) specifically requires courts to consider whether the charged offenses fall into certain categories. Namely, courts should consider: (i) "whether the [charged] offense is a crime of violence"; (ii) whether the charged offense is in "violation of section 1591," which concerns sex trafficking of children or by force, fraud, or coercion; (iii) whether the charged offense is "a Federal crime of terrorism"; and (iv) whether the charged offense "involves [either] a minor victim . . . controlled substance, firearm, explosive, or destructive device." 18 U.S.C.

§ 3142(g)(1).  See 18 U.S.C. § 1591.  A grand jury has indicted Baker for seven counts of violation of 18 U.S.C. § 1591.  See Superseding Indictment at 1.  Additionally, two of the Counts in the Indictment and Superseding Indictment involve a minor victim.  See Indictment at 1; Superseding Indictment at 1.  Baker's charged offenses are the kind of offenses of which 18 U.S.C. § 3142(g)(1) specifically requires the Court to take notice.  See 18 U.S.C. § 3142(g)(1).

According to Langer's testimony at the detention hearing, Baker allegedly targeted "homeless, often drug addicted, vulnerable women," and recruited them to prostitution by way of "force, coercion, threats, violence."  See Sept. 29 Tr. at 8:12-16 (Langer).  Langer testified to reports that Baker drugged women and transported them to other cities and states.  See Sept. 29 Tr. at 8:23-25 (Langer).  Langer testified to allegations of sexual violence and rape, see Sept. 29 Tr. at 10:24-25 (Langer), and allegations that Baker put a gun to one victim's head and held another victim's head underwater, see Sept. 29 Tr. at 11:2-7 (Simms, Langer).  The allegations that Baker specifically targets vulnerable women and, in one instance, a minor, and uses drugs and physical force to compel them to undertake acts in which they are not willing participants, are particularly troubling to the Court.  The possibility that Baker could target another vulnerable victim persuades the Court that Baker would be a danger to society if released.

In addition to Langer's testimony, the United States presented evidence indicating that one of Baker's associates has already attempted to contact an alleged victim, V.A., who stated in an interview that Baker held her head underwater, and that Baker or one of his associates beat her.  See Response at 5.  The United States alleges that, since Baker's defense team interviewed V.A.

-- an interview which was "unannounced and unscheduled" -- V.A. received a "friend request" on Facebook from an individual who is Facebook friends with Baker and is from Alabama. Response at 5. The United States concedes that it cannot prove Baker was complicit in this contact, but it asserts that "it is extremely coincidental that this person, who V.A. does not know, contacted her from very near Birmingham, Alabama, and is Facebook friends with Adonis Baker." Response at 5. At the March 19, 2018, hearing, the United States argued that the only reasonable inference from these facts is that Baker had something to do with the Facebook contact. See March 19 Tr. at 9:23-24 (Simms). The United States argued that Baker may already have made efforts to contact the victims to "retaliate against them or scare them to the point where they're no longer cooperating with this investigation." March 19 Tr. at 10:3-6 (Simms). This information was not available at the time of the September 29, 2017, detention hearing before Magistrate Judge Fashing. See Response at 5. Although the Court is not predisposed to believe the United States' side of the story, if the allegations presented are true, the Court has no assurance that Baker will not harass, contact, or retaliate against victims and potential witnesses if released. Placing Baker at La Pasada Halfway House does not appear to address the danger concern or decrease the risk that Baker could retaliate against victims, because it appears that Baker can do so through his associates and/or through virtual contact if he gains access to someone's cellular phone or computer at the La Pasada Halfway House or has a visitor to which he can pass on threats. This risk is particularly significant, the Court notes, because several of the victims are planned witnesses for the United States and because three victims have not yet been located. As the United States asserts, "because the

penalties in this case are so severe, the motivation to find these women and silence them is high." Response at 11. While putting Baker on lockdown at La Pasada, with GPS monitoring, certainly reduces the risks of fleeing and danger, these conditions would not reduce those risks to zero, and if Baker walked off, the alleged victims and the United States' case would be in danger. That is a risk, however minimized or mitigated, which is too high to be tolerated.

Because the United States has presented probable cause supporting Baker's federal charges, the statutory presumption that Baker poses a danger to the community is triggered. While Baker has met his burden of production in response to the statutory presumption favoring detention, the presumption remains a factor for the Court to consider in making its ultimate determination regarding detention. See <u>United States v. Stricklin</u>, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."). Baker is charged with sex trafficking by means of force, threats, fraud and coercion; coercion and enticement to engage in prostitution; transportation for prostitution; sex trafficking of a child; and transportation of a minor with intent to engage in criminal sexual activity. See Indictment at 1. Langer's testimony at the detention hearing suggests that there are many victims presenting allegations connecting Baker to a well-organized, multi-state sex trafficking operation, fueled by drugs, coercion, threats of force, and physical force against vulnerable women and, in at least one instance, a minor victim. Evidence that Baker's contact information and his associates are linked to Backpage.com pages advertising women and to hotel records, which is consistent with the information that the Backpage.com pages

reveal, corroborates the victims' reports.  Additionally, there is some indication that one of Baker's

associates has, since the September 29, 2017, detention hearing, attempted to contact V.A., one of

the alleged victims and state's witnesses.  Consequently, the Court finds that, by clear-and-

convincing evidence, Baker is a danger to the community.  If released, the temptation to harass

and silence his alleged victims to avoid the severe sentences which he faces would be great.  In

the end, the Court is convinced that the temptation will be too great.

## IV.    THE COURT BELIEVES IT CANNOT REDUCE BAKER'S RISK OF NONAPPEARANCE TO AN ACCEPTABLE LEVEL EVEN WITH <u>RESTRICTIVE CONDITIONS</u>.

Baker proposes that the Court place him at La Pasada Halfway House to help mitigate his

risk of nonappearance and danger to the community.  The Court is not convinced that this

restriction, even in combination with some of the restrictions which the Court has applied in the

past, would mitigate these risks to an acceptable level to reasonably assure his appearance and to

reasonably assure that he will not be a danger to the community.  In the past, the Court has

considered: "(i) house arrest with RF monitoring; (ii) GPS monitoring; (iii) substantial restrictions

on outside visitors; and (iv) significant restrictions on telephone use."  <u>United States v. Varela</u>,

2012 WL 13081272, at *9–10 (D.N.M. Feb. 21, 2012)(Browning, J.).  While these conditions

would mitigate the risk of Baker's nonappearance and the danger his release poses to the

community, the Court concludes that the temptation for Baker to walk away from the facility is

too great, given the weight of the evidence against him and the severity of the sentence he faces if

convicted.  The Court concludes that the United States has shown by clear-and-convincing

evidence that he would pose a danger to the state's witnesses -- the alleged victims in this case -- and that the risk that he might harass or otherwise attempt to silence them could not be managed if Baker were to leave the facility, which the Court finds more likely than not he would do.

Concluding that a presumption in favor of detention arises in this case because Baker's charged offenses include an offense involving a minor victim under § 1591, the Court also concludes that Baker has presented sufficient evidence to meet his burden of production. Even though Baker has presented sufficient evidence to meet his burden of production here, the Court concludes that, considering the statutory factors in § 3142(g) and the evidence presented, the United States has shown by clear-and-convincing evidence that Baker is a danger to the community and by a preponderance of the evidence that Baker is a flight risk. Finally, concluding that the Court cannot reduce Baker's risk of nonappearance and danger to the community to acceptable levels through the imposition of any condition or combination of conditions, the Court will order that Baker be detained pending trial.

**IT IS ORDERED** that: (i) the Defendant's Appeal of Detention Order, filed March 5, 2018 (Doc. 51), is denied; (ii) the Order of Detention Pending Trial, filed September 29, 2017 (Doc. 15), is affirmed, and (iii) the Order Denying Motion to Release Defendant from Custody, filed January 2, 2018 (Doc. 46) is affirmed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Letitia Carroll Simms
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

 *Attorneys for the Government*

Carey Corlew Bhalla
Law Office of Carey C. Bhalla LLC
Albuquerque, New Mexico

-- and --

Joseph E. Shattuck
Marco & Shattuck
Albuquerque, New Mexico

 *Attorneys for the Defendant*